DREW, Justice
(dissenting).
This litigation presents a classic example of what happens when laymen undertake to prepare legal instruments and advise others on legal matters or represent themselves in transactions that should be handled by those who are trained in the law. Had counsel been consulted when this transaction originated, the doubts, uncertainties and ambiguities with which the record is replete, would probably have been avoided and this litigation and its incident expense and labor saved.
In view of- the exhaustive manner in which the case below was considered and reviewed by the Master in the lower court, Hon. Leland Hyzer, we copy his report at length:
“Report of Special Master
“The above -case was referred to me as Special Master by Order of Reference entered April 7, 1950, to take the testimony and report the same, together with my findings of fact and conclusions of law with my recommendations.
“The parties appeared before me and offered testimony and evidence on hearings held on June 19, June 21, October 10, 1950 and January 26, February 16, and April 4, 1951. The case was argued orallyffiy counsel on June 26, 1951.
Pleadings
“The plaintiffs’ amended bill of complaint is founded on allegations that John A. Mahood and John A. Mahood, In-c. agreed to sell the corporate stock of John A. Mahood, Inc. and the business and good will of the corporation to the plaintiffs for $15,000.00. The parties used a printed form of ‘Bill of ■Sale-Absolute’, as the vehicle for their agreement and dated it December 1, 1948. The complaint refers to it as a preliminary agreement. As a legal document it is not a masterpiece, but it expresses- the price to- he paid, the terms and time of payment and the property and rights to be acquired by the plaintiff, Evangeline Percha.
“The plaintiffs then advanced the theory that the ‘Bill of Sale-Absolute’, of December 1, 1948, does not express the agreement 'of-the parties but that the real agreement is represented by a subsequent writing, this time through the medium of another printed form called a Conditional Bill of Sale, dated *187 January 3, 1949, and a cashier’s check for $9500.00 dated January 6, 1949, payable to the order of John A. Ma-hood, Inc. The conditional bill of sale varies somewhat from the bill of sale-absolute, hut the provisions are substantially the same. The conditional feature in the conditional bill of sale is that if the sum of $5,000.00 with 5% interest evidenced by three promissory notes is paid on or before January 1, 1950, then the bill of sale shall be in full force and effect, otherwise to be null and void.
“The cashier’s check for $9500.00 and its endorsement is the crux of the plaintiffs’ case. The check bears the legend or endorsement:
“ ‘Pay to the order of John Mahood, Inc. Balance $5,000.00 For the purchaser John Mahood, Inc. 9533-2nd N. E. Miami, Fla. 1 hereby agree to refund all money paid to purchase said business if Byron Powell fails to secure a sales-license to sell real estate in Miami, Fla.’
“The check was endorsed and deposited to John A. Mahood’s special bank account.
“It is alleged that plaintiffs paid $10,-000.00 of the $15,000.00 purchase price in cash and' executed and delivered to John A. Mahood promissory notes totaling $5,000.00.
“The complaint then alleges that the plaintiffs were placed in partial possession of the business and so continued until about May 19, 1949. It is then alleged that the plaintiff, Byron Powell, was refused a real estate license by the Florida Real Estate Commission, by reason of which the condition, on which the sale to the plaintiffs was purportedly made, became effective and the plaintiffs were entitled to rescind the contract and to recover the $10,000.00 paid on the purchase price less any credits to which the defendants may be entitled upon an accounting.
“The answer of -the defendant, John A. Mahood, Inc., is a general denial of the material allegations of the complaint.
“The answer of the defendant, Erna A. Mahood, as Executrix of the Estate of John A. Mahood, deceased, alleges that an agreement was made between John A. Mahood as vendor and Evangeline Percha as vendee for the sale of the real estate business of John A. Mahood, Inc., and the capital stock of the corporation for $15,000.00 and that the entire agreement is contained in the preliminary contract of December 1, 1948. She denies that the sale was upon the condition that the defendant, Byron Powell, be successful in securing a salesman’s license to sell real estate in Miami or upon any other condition. The answer then alleges that the closing of the transaction took place on January 3, 1949, at which time John A. Mahood executed and delivered to Evangeline Percha a conditional bill of sale and that thereafter the plaintiffs were placed in possession of the business and they were actively engaged in the operation and management of the business for a period of more than four months, and that at the end of this period they abandoned the business.
“The defendant then counterclaimed against the plaintiffs for the amount of the promissory notes evidencing the unpaid portion of the purchase price secured by the conditional bill of sale and prayed that the property described in the conditional bill of sale be sold to satisfy the amount found to be due on the notes.
“On the issues raised by the pleadings, the parties offered testimony and documents in support of their respective contentions.
Evidence
“The negotiations for the purchase of the business known as John A. Ma-hood, Inc., were carried on by the plaintiff, Byron Powell, first through J. H. Mitchell, a broker. The price and terms were discussed and an agree *188 ment readied orally. A form of contract was drawn, first naming Byron Powell as the purchaser. This contract was mailed to Powell who had returned to Detroit. By letter (Defendants’ Exhibit 4) Powell approved the form of the contract except that he desired it to be in the name of Evangeline Per-cha as purchaser. The record shows that the contract was redrafted as requested by Powell showing Evangeline Percha as purchaser and returned to Powell. The contract, dated December 1, 1948, was executed by Evangeline Percha. (Plaintiffs’ Exhibit 1) and returned to J. H. Mitchell by Byron Powell in a letter dated December 15, 1948 (Defendants’ Exhibit 6) in which he stated that they (apparently meaning Powell and Percha) were satisfied with the agreement. A -check in the amount of $1500 representing the initial payment was enclosed with Powell’s letter. The contract was then executed by John A. Mahood, Inc.
“There are no provisions in the contract of December 1, 1948, which made the transaction in any way conditional, nor is there any reference to the plaintiff, Powell, obtaining a salesman’s license.
“Subsequently, about January 8, 1949, the plaintiff, Byron Powell and John Mahood and J. H. Mitchell met for the purpose of closing the transaction. At this meeting the ‘Conditional Bill of Sale’ (Plaintiffs’ Exhibit 2) was presented, which embodied the provisions contained in the preliminary agreement of December. There are no conditional provisions in this bill of sale except that the sale is conditioned upon the. purchasers paying the promissory notes representing the balance of the purchase price as they came due. At this meeting, Powell had a cashier’s check drawn on the Manufacturers National Bank of Detroit, dated January 6, 1949, payable to the order of John Mahood, Inc. in the amount of $9500.00. The defendant, Evangeline Percha, was not present at this meeting to sign- the contract and to sign the promissory notes called for therein. A question was raised by the plaintiff,. Powell, as to the necessity of escrow-ing the funds represented by the cashier’s check until the purchasers were ready to deliver the necessary papers to consummate the deal. In order to consummate the deal, the conditional bill of sale and the three notes had' to be mailed to Evangeline Percha in Detroit for her signature. The testimony does not disclose that during the meeting there was any understanding that the funds represented by the cashier’s check were to be escrowed until Byron Powell might obtain a salesman’s license in the State of Florida. In lieu of the escrow and before the cashier’s check was delivered to John A. Mahood, Powell placed an endorsement thereon which contained the sentence:
“ T hereby agree to refund all money paid to purchase said business if Byron Powell fails to secure a salesman license to sell real estate in Miami Fla.’ “The check was endorsed in the Name of John A. Mahood, Inc. by John A. Mahood, President, and deposited in the account known as John A. Mahood, Special. Mr. Mahood paid to Byron Powell the sum of $1,000.00 from the proceeds of the check and took in return therefor a note in the amount of $1,000.00 eventually signed by Evangeline P'ercha and Byron Powell payable on or before ninety days-from January 3, 1949. $8500.00 of the $9500.00 check was retained by Ma-hood. The $1500.00 paid at the time of the execution of the agreement in, December, 1948, and the $8500.00 made up the $10,000.00 cash portion of the purchase price.
“The conditional bill of sale, which is dated January 3, 1949, and the three promissory notes representing the balance of the purchase price (Defendants’ Exhibits 10,' 11 and 12) were then sent to Evangeline Percha in Detroit. Some days later the three notes and the conditional bill of sale were *189 returned to Miami after they had been signed by Evangeline Percha and were delivered to John A. Mahood and he then executed the conditional bill of sale.
"No change was made in the provisions of the conditional bill of sale as drawn which made it in any manner conditioned upon the plaintiff, Byron Powell, obtaining a real estate salesman’s license in Florida.
“Pursuant to the terms of the preliminary agreement of December 1, 1948, and the terms of the conditional bill of sale of January 3, 1949 the defendants took over the business about January 8th or 9th, 1949. The bank account of John A. Mahood, Inc. was changed so that Evangeline Percha and Byron Powell drew upon the account (Defendants’ Exhibit 1). The plaintiffs deposited money in the account and drew checks upon it. The plaintiff, Powell, drew $50.00 per week from the business. John Mahood paid his portion of the rents and salaries as provided for in the Conditional Bill of Sale of January 3, 1949.
“The books of John A. Mahood, Inc. were delivered to the plaintiffs, Percha and Powell. The plaintiffs operated' the business with John A. Mahood in accordance with the terms of the original agreement until sometime in May of 1949. During this period the defendant, Powell, applied to the Florida Real Estate Commission for a salesman’s license. His first application was refused but he continued his efforts to obtain the license. There is testimony in the record that even after the filing of this suit the matter of his application had not definitely been closed by the Florida Real Estate Commission.
“The plaintiffs abandoned the business in May of 1949. However, they did not then resign as.officers of John A. Mahood, Inc. It appears that they executed resignations as of September 26, 1949 (Plaintiffs’ Exhibits 8 and 9), but these resignations were never delivered to John A. Mahood' and their existence was not disclosed until they were produced at one of the master’s hearings in this case.
“The execution of the three notes representing the unpaid portion of the purchase price and the ownership by the -defendant, Erna Mahood, as Executrix of the Estate of John A. Ma-hood, deceased, is not controverted. There is, likewise, no question that no payments have been made on the notes. The notes are all past due.
Findings
“From the testimony and exhibits received in evidence, I find that a valid contract was executed by John A. Ma-hood, individually, and John A. Ma-hood, Inc. for the sale of the corporation stock and the business to Evangeline Percha and Byron Powell. The contract was in the name of Evangeline Percha but both she and Byron Powell were- the equal purchasers. Th'e purchase price of $15,000.00 was payable $10,000.00 cash and the balance of $5,000.00 was represented by promissory notes which were payable $1,000.-00 on or before' ninety days, $2,000.00 on or before six months and $2,000.00 on or before 12 months after January 3, 1949, the' date of the notes.

“If the conditional bill of sale and the three notes had been executed by the parties and delivered to John A. Mahood at the same time as the delivery to him of the' cashier's check bearing the endorsement made by Byron Powell, then the condition noted on the back of the cashier’s check that Mahood was to refund all monies paid if Byron Powell failed to secure a salesman’s license to sell real estate might have had a bearing on the transaction. This, however, was not the case, because the notes and the conditional bill of sale were executed and delivered to John A. Mahood subsequent to the delivery to him of the cashier’s check. As' already stated, there is no provision in the conditional bill of sale pertaining to Byron Powell obtaining a salesman’s license.

*190 "It is a recognized rule of law that the final act of the parties is controlling. The execution and delivery of the conditional hill of sale and the promissory notes was the final act of the parties. If \there was any intention between the parties that the sale was conditioned upon Byron Powell obtaining a salesman’s license, it could have and should have been inserted in the conditional bill of sale. (Emphasis supplied).
“The final clause in the Conditional Bill of Sale recites:
“ Tn Witness Whereof and in full agreement and accord by and between the Buyer and Seller of the Real Estate business of John A. Mahood, Inc. and John A. Mahood, Individual, the party of the first part and the party of the second part have hereunto set their hands and seals this third day of January, 1949.’
“The contract of purchase and sale was made when the agreement of December 1, 1948, was executed and delivered'. The sale was consummated when the conditional bill of sale and the promissory notes were executed and delivered'. These instruments clearly outline the intention of the parties.
“It is also a rule of law that an instrument purporting to embody the final intention and agreements of the parties must be interpreted according to the legal import of its terms.
“This doctrine is stated in 12 Am. Juris. Section 232 on the subject of Contracts:
“ ‘Where the parties intend a writing to be the sole memorial or integration of the contract, the writing embodies the contract and, accordingly, the interpretation of the contract consists of the interpretation of the writing. A solemn instrument embodying the final intentions and agreements of . the parties must be interpreted according to the legal import of its terms. In the absence of mistake or fraud, a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. The written agreement, and not the correspondence which preceded it, is the correct exponent of the contract. All verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument.
“ Tn determining whether the parties intended a writing to be an integration of the entire transaction, the subject matter and surrounding circumstances may, and should, be taken into consideration.’
“The conditional bill of sale was executed by the parties and delivered and accepted by the parties after the meeting when the $9500.00 check with its legend or endorsement was delivered by Powell to Mahood. The conditional bill of sale makes no reference or mention of the condition that Powell was to obtain a real estate salesman’s license. Intention of the parties must be determined from the wording of the written contract.
“It is, therefore, my finding that the plaintiffs -have not proved the allegations of their amended complaint and are not entitled to the relief prayed for. It is my further finding that Erna Mahood, as Executrix of the Estate of John A. Mahood, Deceased, has established the allegations of her counterclaim on the three promissory notes and that the amount represented by the said three notes is now due and payable, with the exception of her claim for attorney fees as called for in the notes, for the reason that no testimony was offered as to reasonable attorneys’ fees.
Recommendations
“On the record it is my recommendation :
“1. That the relief prayed for by the plaintiffs, Evangeline Percha and *191 Byron Powell be denied and the complaint dismissed.
“2. That a decree be entered in favor of Erna Mahood, as Executrix of the Estate of John A. Mahood, Deceased, on her counterclaim for the principal amount represented by the three promissory notes together with interest thereon from the date of the notes to the date of the decree.”
Objections were .filed to the above report by appellants, were overruled and a final decree was entered as recommended. It is from this final decree that an appeal is taken.
The Master fell into error in the underscored portion of his report because he misconstrued the legal effect of the evidence.
As I read the evidence in this case, and as I understand the findings of the Master, there is no question about the language being added to the back of the check before delivery to Mahood. I understand the Master to hold this, but it is his theory that inasmuch as the last bill of sale and the notes were delivered after the check was delivered, that the endorsement became unimportant because the last act was inconsistent with the endorsement and was controlling. I do not agree to this conclusion and it is my view that the legal effect of all the evidence is contrary to it.
The only thing clear in the whole transaction is the endorsement and the fact that this matter was handled by amateurs; but, when it is all boiled down to its essence, it is quite clear to me that Powell and Percha agreed to buy a real estate business if Powell could obtain a license to sell real estate in Florida.
I don’t know from the evidence whether this question of making the deal contingent on Powell’s license was an afterthought or not, but that doesn’t make much difference when the whole picture is viewed as one transaction, which it was. See Crawford, as Executor etc. v. McGraw, et al., filed in this Court November 21, 1952 (not yet reported), where we held that the intention of the- parties and the contract itself must be construed as though it was one instrument, even though there were a number of documents. The real principle of law involved in this case is: What did the parties agree to? What was \the contract? It is our duty to determine that — particularly in a case like this — and give effect to it.
Even if the idea embodied in the language on the back of the check occurred for the first time on the occasion of its delivery, I see nothing unusual about that or any reason why it would not control. At that time Powell had invested only $1,500 on a $15,000 purchase. It is conceivable that he would have withdrawn from the deal and forfeited his deposit or suffered an action for damages rather than go ahead. It is certain — and the Master and the lower Court find — that the check was delivered and accepted with the plain language on the back over the signature of Mahood agreeing that the money would be refunded that Powell had paid to purchase the business if he didn’t get a real estate license. The language indicates a-complete purchase, not a pending or execu-tory matter. In other words, it reads to me like both parties considered that’ the sale was through and completed, and I think they so construed it. I see no difference in this transaction than I would in one where any article of personalty had been purchased, but at the closing and before the purchaser had paid the purchase price the parties agreed that it would be returned under certain named conditions, in which event the buyer’s money would be refunded.
For the reasons herein set forth, I must dissent from the order of affirmance. I believe the cause should be reversed for further proceedings consistent with this opinion.